[Civ. No. 20798. Fourth Dist., Div. Two. Jan. 15, 1980.]

GEORGE F. KOSSLER et al., Plaintiffs and Appellants, v.
PALM SPRINGS DEVELOPMENTS, LTD., et al.,
Defendants and Respondents.

COUNSEL

George F. Kossler, in pro. per., for Plaintiffs and Appellants.

Stephens, Martin, Berg & Lasater and R. Wicks Stephens II for Defendants and Respondents.

OPINION

KAUFMAN, Acting P. J.—Defendant Palm Springs Developments, Ltd.,[1] a general contractor, owned real property in the City of Palm

---

[1] The principal defendant is Palm Springs Developments, Ltd., a California limited partnership. However, plaintiffs also named as defendants a number of the partners in

Springs which it was developing as a 13-home tract. Plaintiffs George F. Kossler and Jeri L. Kossler, husband and wife, agreed to purchase one of the homes under construction. When construction was purportedly completed, a dispute arose between the parties as to whether or not the house was, in fact, completed in good and workmanlike fashion and in accordance with the floor plan diagram shown plaintiffs. Defendant informed plaintiffs that inasmuch as they were unwilling to accept the house as completed, it was terminating its agreement to sell the property to plaintiffs. Plaintiffs thereupon instituted this action for specific performance and/or damages for breach of contract, and fraud. Defendant cross-complained for quiet title. Trial was to the court. Judgment was for defendant,[2] and plaintiffs appeal.

*Facts*

Mr. Kossler is an attorney and was considering moving his practice from Orange County to Palm Springs. In November 1976 plaintiffs responded to a newspaper advertisement concerning the homes under construction by defendant. They were shown the property by a real estate broker and given a copy of a floor plan diagram for the four-bedroom, three-bath home they subsequently agreed to purchase. The home was to adjoin the fairway of a public golf course and one wall of the master bathroom was planned to be all glass which would give passing golfers an unobstructed view into the bathroom. The floor plan shown to plaintiffs depicted a grape stake fence around the glass wall of the master bath as well as a medicine cabinet in the master bathroom and another medicine cabinet in a bathroom designated bathroom number two.

On November 7, 1976, plaintiffs deposited $500 toward the purchase of the house which they had been told would be completed by about the third week in December. Thereafter plaintiffs visited the construction site frequently to observe the progress being made in the construction of the house. On January 20, 1977, the parties executed a written contract for the purchase and sale of the property on a California Real Estate Association form. Among the provisions were two of potential significance to this appeal. Provision 5 called for the execution of escrow

the limited partnership. For the sake of simplicity, we shall refer to the parties defendant as the defendant.

[2]When the court indicated that judgment would be for defendant on the complaint, defendant dismissed its cross-complaint.

instructions within 7 days from the seller's acceptance and for the closing of escrow within 60 days from the seller's acceptance, "subject to written extensions signed by Buyer and Seller." Provision 10 read: "Time is of the essence of this contract."

The next day the parties opened an escrow and executed escrow instructions. Plaintiff deposited in the escrow $4,350. The total sales price was specified to be $86,950. Plaintiffs were to receive a $2,000 credit as a carpeting allowance. These original instructions contemplated that plaintiffs would obtain a conventional first trust deed loan and that a second trust deed would be carried back by defendant at the same rate of interest and amortized over the same period as the first trust deed.

The instructions contained several provisions pertinent to the times for performance and closing. First, the instructions provided that "[p]rior to March 20, 1977, ... Buyer, will hand you $78,255.00 ... and any funds and instruments necessary for [buyer] to comply with these instructions, which you [the escrow holder] are to use provided you can have issued through Safeco Title Insurance Company a CTLA standard coverage policy of title insurance" for the described property. Next, at the bottom of the same page, the instructions provided: "I, Seller, agree to the foregoing instructions and prior to the said date will hand you any funds and instruments necessary for me to comply therewith provided you hold the funds and instruments deliverable to me."

On page 3 of the instructions it was provided: "The entire sum of money paid or advanced by the Purchaser and deposited herein shall be held in escrow until you hold either (1) proper release of the subject property from blanket encumbrance thereon, if any; (2) the Seller or Buyer defaults under the terms of this escrow and there is a determination as to the deposition [sic] of such monies, or (3) Seller orders the return of such monies of Buyer. [¶] The undersigned Buyer understands that a building and/or improvements are to be erected, are under course of constructions [sic], or have recently been completed on the property described. ... You are authorized to hold all papers and monies in escrow until the Notice of Completion has been recorded on said lot and the title company will write its title policy eliminating said Notice of Completion. [¶] This escrow shall close only upon filing of Notice of Completion in connection with subject property and at such time as Seller is able to deliver to Buyer a policy of title insurance in-

suring title...to be free of Mechanic[']s Liens. Seller shall promptly notify Escrow Holder as to the date of filing of said Notice."

Under "GENERAL PROVISIONS" on page 2 there was the customary instruction "If the conditions of this escrow have not been complied with prior to the date stated on Line 1, or any extension thereof, you are nevertheless to complete the escrow as soon as the conditions, except as to time have been complied with, unless written demand shall have been made upon you not to complete it."

On February 9, 1977, the original escrow instructions were amended to delete the provisions concerning the first and second deeds of trust and to provide, in essence, that plaintiffs would pay the entire purchase price in cash and the amount to be deposited by buyers on or before March 20, 1977, was changed to $86,950.

Having moved to Palm Springs and rented a condominium, plaintiffs visited the construction site daily after January 20. They made arrangements with the construction superintendent for the installation of upgraded kitchen appliances. They were permitted to trade in the appliances supplied by defendant, purchase upgraded appliances, and deliver them to the jobsite for installation by defendant. Accordingly, plaintiffs purchased a microwave oven, a ceramic-top, self-cleaning oven range unit, a dishwasher and a garbage disposal at a net cost of $1,150.69 over and above the credit received by them for the appliances traded in. Plaintiffs also made special requests with respect to such items as paint and decorating, in which defendant attempted to accommodate them at no additional cost.

In addition, plaintiffs testified that they purchased custom-measured carpeting for the house at a cost of $3,835 as well as $1,120 worth of custom-measured shutters and $200 worth of redwood paneling for a bathroom.

On March 11 the house was still not completed and plaintiffs moved their household furniture and furnishings from their residence in Irvine, which was being sold, to a public storage facility in Palm Springs.

On March 14, six days before the closing date mentioned in the purchase contract and escrow instructions, plaintiffs visited the construction site and noted that the medicine chests depicted on the

floor plan diagram as being in the master bath and the number two bath had not been installed, that the fence around the glass wall in the master bathroom had not been constructed and installed and that there were a myriad of other more or less minor deficiencies including a number of things not yet done and a number of things incorrectly or improperly done.

March 20, the date specified on line 1 of the escrow instructions, was a Sunday. Plaintiffs did not deposit the balance of the purchase price in escrow prior to that date, nor as it turned out, subsequently.

On March 28, defendant caused to be recorded a notice of completion with respect to the property in question which recited that "[a] work of improvement on the property hereinafter described was completed on March 22, 1977."

On March 27, plaintiffs visited the construction site to measure for wallpaper and placement of furniture, and asked the salesperson when the home would be completed and when plaintiffs would have a "walk through." The salesperson indicated he would find out and telephone plaintiffs. On April 6 the salesperson got in touch with plaintiffs and asked if the walk through could be had on April 9. Plaintiffs were unavailable on that date, so on April 12 the walk through was finally scheduled for April 14. At the walk through defendant's representatives had already prepared a "pick up" sheet consisting of two and a half typewritten pages of listed items to be repaired, corrected or completed. However, when plaintiffs asked about the two medicine chests depicted on the floor plan diagram as installed in the master bathroom and bathroom number two and the fence depicted on the floor plan as installed in front of the glass wall in the master bathroom, they were informed by defendant's representative that these items would not be provided. Apparently there was some discussion between plaintiff's and defendant's representative which upset the latter and she placed a telephone call to defendant Appel, one of the managers of the limited partnership. There ensued a conversation between Mr. Kossler and Mr. Appel in which Mr. Appel stated among other things that he was "getting sick and tired of all your complaining out there, and I'm not going to do one more thing to that house"; "I don't care what the plans provide. You didn't buy the house, based on the plans"; "I'm not going to do another thing to that house. If you want your money back, you can have it."

When Mr. Kossler told Mr. Appel that plaintiffs did not want their money back but they wanted defendant to finish the house, Mr. Appel responded in part: "I told you, I'm not doing another thing to that house....[¶] [S]o sue me....[¶] You either take the house the way it is, or I'm going to cancel you out."

Mr. Kossler then stated: "Well, we want the house, but we want it completed." Mr. Appel responded: "Okay. I'm not going to sell you the house. I'm breaching the contract." Mr. Kossler asked: "You are refusing to sell the house?" Mr. Appel replied: "That's right, I'm breaching the contract, right now."

The following day plaintiffs received from defendant a telegram informing them that pursuant to the telephone conversation between Mr. Kossler and Mr. Appel, defendant was forwarding cancellation instructions to the escrow, and the same day defendant sent a letter to the escrow authorizing the escrow officer to cancel the escrow and refund all sums on deposit to the buyer charging any accrued costs to the seller.

The same day plaintiffs filed their complaint in this action and notified the escrow holder, requesting that the escrow not be cancelled. The escrow was apparently not cancelled, and plaintiff's $4,350 remains on deposit in the escrow.

The trial court found that time was of the essence of the transaction; that the date for plaintiffs' payment into escrow, March 20, 1977, was not extended by defendant either expressly or by implication; that defendant performed each and every condition required to be performed by it under the purchase contract and the escrow instructions and that defendant was ready, willing and able at all times to close the escrow in accordance with its terms and to transfer title to "lot 18" to plaintiffs in accordance with the terms of the contract and escrow instructions; that plaintiffs failed to pay the balance of the purchase price into escrow on or before March 20, 1977, or at any time thereafter; that plaintiffs were not excused from their obligation to pay the balance of the purchase price on or before March 20, 1977, and that their failure to tender or pay that sum as required was a material breach of the purchase agreement and the escrow instructions; that on April 15, 1977, "the dwelling having been completed" and the plaintiffs being in breach due to their wilful failure timely to tender or pay the balance of the purchase price,

defendant cancelled and terminated the escrow and ordered the return of plaintiffs' deposit to them with all expenses to be charged to defendant; that the escrow was cancelled by defendant in accordance with the terms of the purchase agreement and escrow instructions; that "[p]laintiffs failed to establish that they had the ability to perform the requirement of the Escrow Instruction that they pay the balance of the purchase price into escrow. Indeed, the testimony of plaintiffs established that they were unable to so perform"; "plaintiffs sustained no damage as alleged in . . . the Complaint or otherwise"; and that there was no misrepresentation to plaintiffs by any of the defendants or their representatives.

### Discussion of Contentions

Although plaintiffs' contentions are not always phrased in precisely these terms, their attack on the judgment is based on their conclusions that the essential findings of the trial court are not supported by substantial evidence and are contrary to law. We agree.

The court's findings that time was of the essence of the transaction and that the date by which plaintiffs were to deposit in escrow the balance of the purchase price, March 20, 1977, was not extended by defendant expressly or by implication are both contrary to the applicable law and inconsistent with the uncontradicted evidence. The purchase agreement did contain the provision that time was of the essence, but there were several times to which that provision could have reference. The seller was given only three days to accept the offer of the buyer, and we have little doubt that the time of the essence provision was meant to apply to that time limitation. Another time limitation specified in the agreement was that an escrow should be opened within seven days after the seller's acceptance of the buyer's offer. Perhaps the time of the essence provision was also meant to apply to that time limitation. If so, it was satisfied, because the escrow was opened on the next day following the seller's acceptance. The other time limitation found in the purchase agreement is that the escrow to be opened should provide for a closing date within 60 days from the seller's acceptance, "subject to written extensions." **(1)** But the time of the essence provision could not conceivably have been intended by the parties to apply to that time limitation. What was being purchased was a house under construction with respect to which the date of completion was unknown, and the escrow was not intended by either party to close prior to completion of

the home under construction as evidenced by the express provision to that effect in the escrow instructions executed one day after execution of the purchase agreement.

Moreover, it is fundamental that where an agreement is expressed through a series of writings, they must be construed collectively in ascertaining the whole agreement between the parties (Civ. Code, § 1642; *Katemis* v. *Westerlind*, 120 Cal.App.2d 537, 542 [261 P.2d 553]) and that this rule applies where an agreement for the purchase and sale of real property is elucidated by the provisions contained · in escrow instructions executed for the purpose of consummating the purchase and sale transaction (*Katemis* v. *Westerlind, supra*, and cases there cited). Here, in the escrow instructions both parties agreed to deposit the funds and documents necessary to close the escrow prior to March 20, 1977, the recited closing date. However, it is manifest that that date was not considered to be of the essence, for the escrow instructions contained the customary provision authorizing the escrow holder to complete the escrow at a later date if not closed on the date specified unless one of the parties has theretofore demanded cancellation. Moreover, the escrow instructions expressly provided that escrow was not to close until a notice of completion with respect to the home under construction had been filed for recordation.

The applicable law was admirably summarized in *Katemis* v. *Westerlind, supra*, 120 Cal.App.2d at page 543: "Professor Pomeroy, in his treatise on Specific Performance, states, 'the prescribing a day at or before which, or· a period within which, an act must be done, even with a stipulation that it shall be done at or before the day named,...does not render the time essential with respect to such an act.' [Citation.] The general rule in equity is that time is not of the essence unless it has been made so by...express terms or is necessarily so from the nature of the contract. [Citation.]· (See also *Lifton* v. *Harshman*, 80 Cal.App.2d 422, 425-426, 433 [182 P.2d 222] (disapproved on other grounds insofar as contrary in *Pao Ch'en Lee* v. *Gregoriou*, 50 Cal.2d 502, 506 [326 P.2d 135]); *Weneda Corp.* v. *Dispalatro*, 225 Cal.App.2d 187, 191 [37 Cal.Rptr. 267].)

Defendant urges that even if time was not of the essence, the language of the escrow instructions by which plaintiffs agreed to deposit the balance of the purchase price on or before March 20, 1977, established such deposit by plaintiffs as a condition precedent to its duty to

perform. Not so. Defendant also promised to deposit into escrow prior to March 20, 1977, all funds and documents it was obligated to supply. (2) It is universally held that the reciprocal promises of the buyer and seller to deposit funds and documents into escrow on or before the same date constitutes the performance of each a condition concurrent. (*Weneda Corp.* v. *Dispalatro, supra,* 225 Cal.App.2d at pp. 191-192; *Diamond* v. *Huenergardt,* 175 Cal.App.2d 214, 220 [346 P.2d 37]; *Groobman* v. *Kirk,* 159 Cal.App.2d 117, 123 [323 P.2d 867]; *Katemis* v. *Westerlind, supra,* 120 Cal.App.2d at pp. 545-546; see also Civ. Code, § 1437.)

Defendant's reliance on the provisions in the escrow instructions authorizing the escrow holder to retain all moneys and documents in escrow until the recordation of a notice of completion is entirely misplaced. Manifestly, those provisions were included in the escrow for the benefit of the buyer. Defendant's argument that whether or not the home was completed by March 20, 1977, plaintiffs were required to deposit the balance of the purchase price by that date because defendant had invested a great deal of money in constructing the home and was entitled to be certain plaintiffs had the ability to complete the purchase is unpersuasive. There is no evidence that defendant questioned the financial ability of plaintiffs to complete the purchase at any time during this entire unhappy episode prior to the institution of litigation. Moreover, it would not accord with commercial reality to expect a purchaser to deposit into a noninterest-bearing escrow account more than $86,000 substantially in advance of the event upon which escrow was to close, namely, the recordation of the notice of completion and elimination of the possibility of mechanic's liens.

Even if it could be somehow concluded that payment by plaintiffs of the balance of the purchase price into escrow on or before March 20 was a condition precedent, the uncontradicted evidence of the conduct of defendant establishes as a matter of law that strict compliance by plaintiffs on or before March 20 was waived by defendant. Defendant arranged a walk through of the property first for April 12 and then for April 14, 1977, and conducted the walk through on April 14, unequivocally evidencing that plaintiffs' performance on that date or shortly thereafter would be considered timely. Indeed, when Mr. Appel informed Mr. Kossler that defendant would not sell plaintiffs the property, his language expressly recognized the vitality of the contract to that time, and no assertion was made that plaintiffs had breached the

contract by failing to deposit into escrow the balance of the purchase price by March 20. While waiver is ordinarily a question of fact, where only one reasonable inference can be drawn from the evidence, the existence of a waiver becomes a question of law. (*Loughan* v. *Harger-Haldeman*, 184 Cal.App.2d 495, 503 [7 Cal.Rptr. 581]; see also *Silva* v. *National American Life Ins. Co.*, 58 Cal.App.3d 609, 615 [130 Cal.Rptr. 211], and cases there cited.)

Where a specified time for performance has been waived by a party, "he must, in order to put the other in default, not only give notice that strict compliance will thereafter be required but must allow the other party a reasonable time within which to perform. [Citations.]" (*Lifton* v. *Harshman, supra*, 80 Cal.App.2d at p. 433; see also *Chin Ott Wong* v. *Title Ins. & Trust Co.*, 89 Cal.App.2d 183, 188 [200 P.2d 541], and cases there cited.) Here, no demand was ever made by defendant that plaintiff deposit the balance of the purchase price in escrow on any particular date, unless Mr. Appel's ultimatum to Mr. Kossler on April 14 that plaintiffs must accept the house as it was or suffer cancellation may be construed as a demand for plaintiffs' performance on that date. Even if such a construction is possible, however, as we shall see defendant had no right to demand full performance by plaintiffs on April 14.

We return to our conclusion that pursuant to the numerous cases earlier cited, the obligations of plaintiffs and defendant to perform were concurrently conditional. In a contract for the purchase and sale of real property calling for concurrent performance, neither party can place the other in default without first performing or tendering his own performance with the ability to perform. (*Weneda Corp.* v. *Dispalatro, supra*, 225 Cal.App.2d at p. 192; *Diamond* v. *Huenergardt, supra*, 175 Cal. App.2d at p. 220; *Katemis* v. *Westerlind, supra*, 120 Cal.App.2d at p. 546.) Thus, plaintiffs could not be found to be in breach of contract unless defendant first performed or offered to perform. Although the trial court found that defendant performed each and every obligation it was bound to perform under the purchase agreement and escrow instructions, that finding is contrary to the uncontradicted evidence.

The trial court did not specify the date upon which it found that defendant had completed construction of the house. The finding as to completion is contained in another finding as a recital, referring to "the dwelling having been completed" by April 15, 1977. In its appellate brief defendant asserts that the evidence established that it had com-

pleted the house at least as early as March 22, the date recited as the date of completion in the notice of completion recorded March 28. The critical date, however, at least initially, was March 20, 1977, for it was plaintiff's failure to perform on or before that date that the trial court found to constitute a material breach of the purchase agreement and escrow instructions. There is no evidence whatever that construction had been completed by March 20. Defendant's own notice of completion stated that the work was not completed until March 22. Thus, defendant had neither performed or tendered performance on or before March 20, 1977, and since its duty to do so was a condition concurrent with plaintiffs' duty to perform on that date, plaintiffs' failure to pay into escrow the balance of the purchase price on or before that date was not a breach of contract. The finding of the trial court that it was is contrary to law.

If the court's findings are to be interpreted as indicating that defendant had fully performed by April 14 or April 15 that finding, too, is contrary to the uncontradicted evidence. Even if the myriad more or less minor deficiencies listed by defendant's representative in connection with the walk through are ignored,[3] the uncontradicted evidence establishes that the fence depicted on the floor plan diagram outside the glass wall of the master bathroom had not been constructed and that the medicine cabinets depicted as a part of the master bathroom and bathroom number two had not been installed.

Defendant asserts that it eliminated the medicine cabinets because a plumbing problem was encountered during construction and that it did not erect the fence outside the glass wall because of aesthetic considerations. It further asserts that in lieu of these features, defendant included in the house a number of items and features that were not depicted on the floor plan diagram such as tile counters, hardwood cabinets, air conditioning in one room not originally planned and a fence surrounding the entire property. However, these assertions disclose a fundamental misconception of the relationship between the parties and defendant's duties under the purchase agreement and escrow instructions.

---

[3]Plaintiffs' expert witness testified that the following items remained to be completed or corrected at the costs indicated: construct and install redwood fence, $300; install two medicine chests, $140; stain and hang bar doors, $100; align closet door, $250; patch ceiling, $30; reinstall the dishwasher, $15; straighten heat registers, $15; repair broken tile in kitchen, $50; replace kitchen cabinet door, $75; replace missing screens, $50; repair mantle, $30; repair scratched doors, $50.

■ When a contractor who is both owner and builder contracts to sell a home under construction on the basis of a floor plan diagram or other plans or graphic representations, the obligation incurred is not to build and deliver whatever house the contractor chooses but, rather, to build and deliver a particular house in conformity with the plans or other graphic material shown to the buyer.[4] The relationship between the parties in such a situation is dual. The contractor-owner-builder is to the buyer both a seller of real property and a contractor who has agreed to build a specific structure. A contractor-owner-builder may retain the right to make changes at his whim during construction by not selling the home until after construction has been completed. However, when he contracts to sell a home to be constructed or a home under construction he may no longer make whatever changes he chooses during the course of construction without the agreement of the buyer. Thus, even ignoring the items on defendant's "pick up" list, it is clear that defendant had not fully completed the home it contracted to build even by April 14, 1977, and the court's finding that defendant fully performed the contract is contrary to the evidence.

Next, defendant invokes the doctrine of substantial performance and asserts that the trial court's determination must be upheld on that theory. Citing several cases, plaintiffs claim that the doctrine of substantial performance does not apply to escrows. The cited cases stand for the well accepted proposition that full performance is required to satisfy conditions to the closing of an escrow. However, again the dual relationship between the parties in a situation such as this comes into play. The problem at hand relates primarily if not exclusively to that aspect of the transaction that might be identified as the construction contract were the contractor not also the owner-seller. As the Supreme Court stated in *Posner* v. *Grunwald-Marx, Inc.*, 56 Cal.2d 169, 186-187 [14 Cal.Rptr. 297, 363 P.2d 313], quoting from Witkin: "'The prevailing doctrine today, which finds its application chiefly in building contracts, is that substantial performance is sufficient, and justifies an action on the contract, although the other party is entitled to a reduction in the amount called for by the contract, to compensate for the defects.'" (See

---

[4]Defendant asserts that the plans and specifications for construction of the house were not incorporated by reference into either the contract for purchase and sale or the escrow instructions. That is true, but both documents make unmistakable reference to the fact that a house under construction is an essential feature of the transaction. No model home was available, and we cannot seriously believe that defendant would argue that plaintiffs agreed to purchase whatever structure defendant might erect, without reference to any plan, diagram or illustration whatever.

1 Witkin, Summary of Cal. Law (8th ed. 1973) Contracts, § 588, p. 503; italics deleted.) We agree with defendant that the doctrine of substantial performance is applicable in this situation.

However, the doctrine of substantial performance was developed to alleviate the injustice that resulted from the rule that a contractor could not recover at all on the contract unless he fully performed. (See *Thomas Haverty Co. v. Jones*, 185 Cal. 285, 288-290 [197 P. 105]; 3A Corbin on Contracts (1960) §§ 659, 660, pp. 157-165.) Application of the doctrine does not give the contractor the right to demand *full* performance from the other party; the other party is entitled to a reduction in the contract price to compensate for whatever deficiencies exist. (See *Posner v. Grunwald-Marx, Inc., supra*, 56 Cal.2d at p. 187; *Thomas Haverty Co. v. Jones, supra*; 3A Corbin on Contracts, *supra*.)

So, having substantially performed, defendant did not have the right to insist that plaintiffs fully perform, i.e., take the house as it was and pay the full contract price therefor. It may be as defendant asserts that other features were added to the house that made its value equal to what it would have been if constructed in accordance with the floor plan shown to plaintiffs, but in order to rely on any such offsetting changes, defendant should have reserved in the contract the right to make such substitutions or changes or obtained plaintiffs' consent to such substitutions and changes prior to their being made.

Defendant might have demanded that plaintiff deposit into escrow the balance of the purchase price had defendant also offered to amend the escrow instructions so that there would be retained in escrow pending correction of the deficiencies an amount equal to the cost of doing the necessary work to complete the home in workmanlike fashion. But it did not do that. It demanded in substance that plaintiffs take the house as it was and pay the full contract price therefor. When plaintiffs refused to do that, as was clearly their right, defendant repudiated the contract by unequivocally stating that it would not sell the property to plaintiffs, confirming the repudiation by telegram and notice of cancellation to the escrow holder the following day.

It is well settled that an unequivocal repudiation of the contract by one party prior to material breach of the contract by the other party excuses the other party from tendering performance of his concurrently conditional obligations. (Civ. Code, § 1440; *Beverage v. Canton Placer*

*Mining Co.*, 43 Cal.2d 769, 777 [278 P.2d 694].) Thus plaintiffs were relieved by defendant's repudiation of the contract from tendering performance. However, in order to obtain specific performance, plaintiffs were still required to show that they were willing and able to pay the purchase price. (*Am-Cal Investment Co.* v. *Sharlyn Estates, Inc.*, 255 Cal.App.2d 526, 539 [63 Cal.Rptr. 518].) While plaintiffs' complaint contained no specific allegation that plaintiffs were ready, willing and able to purchase the property, their filing suit for specific performance certainly made plain their position in that regard, and their ability to perform was tried without objection. The court, of course, found that "[p]laintiffs failed to establish that they had the ability to perform the requirement of the Escrow Instruction that they pay the balance of the purchase price into escrow. Indeed, the testimony of plaintiffs established that they were unable to so perform."

Plaintiffs assert with considerable persuasion that this finding of the trial court is not supported by substantial evidence. However, we do not reach that question. From the court's express language in the finding about plaintiffs' "ability to perform the requirement of the Escrow Instruction" and paying "the balance of the purchase price into escrow," together with its finding that time was of the essence of the contract, the court's finding with respect to plaintiffs' ability necessarily had reference to the date of March 20, 1977, the date by which the escrow instructions required the balance of the purchase price to be deposited. But as we have seen, time was not of the essence, and the crucial date was April 14, 1977. The court made no finding as to plaintiffs' ability to perform on that date, and the state of the evidence with respect to that date is unsatisfactory, due no doubt to the emphasis in the trial court on the date called for in the escrow instructions. When jurisdiction is restored to the trial court, this issue may be retried, and appropriate findings made.

It appears therefore that contrary to the court's findings, plaintiffs were not in default of their obligations under the contract. Unless the trial court's finding that plaintiffs suffered no damages was based on its conclusion that it was they who breached the contract, that finding, too, is contrary to the uncontradicted evidence of the expenses incurred by plaintiffs in reliance on the contract, some of them in purchasing items now installed in the home.

## Disposition

Reversal of the judgment with directions is required. However, by reference to a matter outside the record defendant has raised an issue that might affect the content of the appellate judgment. Defendant informs us that following rendition of judgment in the trial court and pending appeal it has sold the property to a third person whom it asserts is a bona fide purchaser for value without notice. It asserts that, therefore, specific performance can no longer be decreed since defendant no longer has the ability to comply with such a decree. Even if such voluntary disablement to comply with a decree of specific performance might foreclose that remedy, a matter we do not decide, this court cannot resolve the factual question whether the person to whom defendant has conveyed the property is a bona fide purchaser for value without notice (see Code Civ. Proc., § 1908, subd. (a)(2)). We note that plaintiffs recorded a lis pendens when they filed this action, and although the court below purported to expunge the lis pendens in conjunction with its judgment for defendant, the questions that might be raised as to the authority of the court to make that order as a part of the judgment and whether or not that order might have been stayed by plaintiffs' appeal are not properly before us and, of course, have not been briefed or argued.

Accordingly, the judgment is reversed with directions to the trial court to try the issue of whether or not plaintiffs on April 14, 1977, were willing and able to pay the balance of the purchase price less any amount required to complete the house in good and workmanlike fashion in accordance with the floor plan diagram shown to plaintiffs. Thereupon the court is directed to make and enter appropriate findings of fact and conclusions of law consistent with this opinion and to render judgment accordingly. In addition to the foregoing, the court may engage in such evidentiary or other proceedings as it deems appropriate, limited, however, to the question of the nature of the remedy to be afforded plaintiffs, if any, and, if damages are to be awarded, the amount thereof.

McDaniel, J., and Morris, J., concurred.

A petition for a rehearing was denied February 14, 1980, and the judgment was modified to read as printed above. A second petition for a rehearing was denied March 3, 1980. Respondents' petition for a hearing by the Supreme Court was denied April 17, 1980.