967 F.2d 587
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Jack M. LANGSON, Plaintiff-Appellee,
v.
Andrew J. LANE, Defendant-Appellant.
 No. 91-55588.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted May 4, 1992.
Decided June 22, 1992.
 
 1
 Before DAVID R. BROWNING and FARRIS, Circuit Judges, and CAULFIELD* District Judge, sitting by designation.
 
 
 2
 MEMORANDUM**
 
 
 3
 After trial by a special master, the district court held that defendant-appellant Andrew Lane defaulted on his real estate purchase agreement with plaintiff-appellee Jack Langson. Accordingly, it was held that Langson was entitled to terminate the agreement, cancel escrow, and recover his $250,000 escrow deposit. We affirm.
 
 Facts
 
 4
 On July 24, 1989, the parties entered into an Agreement of Purchase and Sale and Escrow Instructions (the "Agreement"), under which Langson was to purchase from Lane certain property known as the Etiwanda Distribution Center located in Ontario, California, (the "Property"), for $16,550,000.00. During the course of this transaction, Lane was a debtor-in-possession in a chapter 11 bankruptcy case pending in the Bankruptcy Court in the District of Massachusetts.
 
 
 5
 Paragraph 1(A) of the Agreement provided that Langson would deposit the sum of $100,000.00 immediately upon the opening of escrow, and paragraph 1(B) provided for an additional $150,000.00 deposit upon the expiration of the therein defined contingency period. The $100,000.00 deposit was made by Langson on August 7, 1989, and the second deposit of $150,000.00 was made on October 24, 1989.
 
 
 6
 Escrow opened with Commerce Escrow Company on July 31, 1989, and was scheduled to close no later than November 28, 1989. Lane chose First American Title Company ("FATCO") as the title insurance company and was to pay FATCO's fee.
 
 
 7
 The Agreement defined the contingency period as the later of the sixty-first day after the opening of escrow or the satisfaction of the conditions precedent as described in the Agreement. Pursuant to the Agreement, Langson could waive any or all of the conditions precedent and make his good faith deposit, or make that deposit without waiving all of the conditions. The five conditions precedent were as follows:
 
 
 8
 a. Lane was required to submit to Langson a preliminary title report within ten days of the opening of escrow, and Langson thereafter had thirty days within which to give written notice of disapproval of any title exceptions;
 
 
 9
 b. Langson had thirty days from the date of opening of escrow in which to conduct a review of the Property;
 
 
 10
 c. Langson had forty days from the date of opening of escrow within which to conduct a permit and license review;
 
 
 11
 d. Langson had sixty days from the date of opening of escrow within which to obtain financing to purchase the Property;
 
 
 12
 e. Lane had sixty days from the date of opening of escrow to obtain and deliver to Langson in a form reasonably satisfactory to Langson a "final" order of the bankruptcy court approving the sale.
 
 
 13
 On August 16, 1989, Langson sent a letter to Lane approving and disapproving certain title exceptions contained in the title report. In that letter, Langson indicated that the bankruptcy order was to be supplied as a condition of closing. Two additional exceptions relating to repurchase options on the Property were also disapproved. The letter provided that Lane could ameliorate the disapprovals by providing on or before the closing date quitclaim deeds or final court orders eliminating the options.
 
 
 14
 On August 18, 1989, a hearing was held before the United States Bankruptcy Court in Massachusetts, and the sale was approved. No objections were ever made to such approval.
 
 
 15
 By letter dated September 1, 1989, Lane promised to eliminate or ameliorate to Langson's satisfaction the disapproved title exceptions. These exceptions to title remained unresolved on September 11, 1989, when Langson sent a second letter in this regard.
 
 
 16
 On September 29, 1989, the deadline for Lane's submission of the bankruptcy order, Langson sent a letter to Commerce Escrow and Lane stating that "buyer is unable to provide its approval of the financing contingency outlined in Paragraph 3B-4 for the following reasons....", those being that:
 
 
 17
 a. Lane had not provided evidence of the existence of repurchase option quitclaims;
 
 
 18
 b. Lane had not provided evidence of a final bankruptcy court order affirming the contract of purchase;
 
 
 19
 c. the unleased status of the building on the Property meant that the financing contingency could not be met by Langson.
 
 
 20
 The letter went on to state, however, "We are still interested in proceeding with this project provided we can address each of the above items in a timely manner." Thereafter, the parties continued to go forward with the Agreement.
 
 
 21
 On October 24, 1989, Langson made the second deposit of $150,000, which under the Agreement was due at the end of the contingency period, and in doing so waived the financing contingency.
 
 
 22
 Langson terminated escrow on November 7, 1989, on the grounds that Lane had failed to deliver the bankruptcy order in a form acceptable to Langson by September 29, 1989.
 
 
 23
 On November 16, 1989, Lane submitted a written order to the bankruptcy court confirming the sale as described in the Agreement, which order purports to be effective as of August 18, 1989. Escrow never received a copy of such letter.
 
 
 24
 In a November 17, 1989 letter to Langson, Lane committed "to prepare for closing as contemplated under the July 24 purchase and sale agreement" and urged Langson "to return to a positive track to a closing." However, Lane never provided to escrow a specification of the amounts owing to encumbrancers on the Property, as required by the November 16th bankruptcy order.
 
 
 25
 In addition, Lane did not provide a quitclaim deed or final court order eliminating one of the two repurchase options on the Property by November 28, 1989, the date that escrow was to close. One quitclaim deed was voluntarily obtained. Lane moved the Bankruptcy Court for an order rejecting the second repurchase option. The court granted the motion, but an appeal was taken. A compromise agreement was then reached, which compromise was approved by the bankruptcy court by order dated November 28, 1989. Neither Langson nor Commerce Escrow ever received a copy of the order approving the rejection of the second repurchase option.
 
 
 26
 On November 29, 1989, Langson sent a second notice of cancellation. Lane refused to consent to cancellation of the escrow and return Langson his two deposits totalling $250,000.00.
 
 DISCUSSION
 
 27
 The "findings of a master, to the extent the court adopts them, shall be considered as the findings of the court." Fed.R.Civ.Pro. 52(a). Thus, such findings of fact by may not be set aside unless "clearly erroneous." See e.g., Kaufman-Brown Potato Co. v. Long, 182 F.2d 594 (9th Cir.1950). A finding is "clearly erroneous" when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. United States v. United States Gypsum Co., 333 U.S. 364, 395, 68 S.Ct. 525 (1948). Questions of law are reviewed de novo. United States v. McConney, 728 F.2d 1195, 1200-01 (9th Cir.1984), cert. denied, 469 U.S. 824, 105 S.Ct. 101 (1984). We may affirm on any grounds finding support in the record. Salmeron v. United States, 724 F.2d 1357, 1364 (9th Cir.1983).
 
 1. Notice Required
 
 28
 Langson contends that Section 3(B)(5) of the Agreement provided for an automatic termination upon the failure to tender the bankruptcy order to Langson by September 29, 1989. Langson claims that he did not waive any condition of the Agreement and that because Lane remained in default, he was entitled to terminate the Agreement on November 7, 1989 without additional notice.
 
 
 29
 The district court's finding that Langson waived the September 29, 1989 deadline is a mixed question of fact and law and therefore subject to de novo review. Under California law, a party to an agreement waives a condition precedent by expressing a desire and intent to go forward with a contract notwithstanding the failure of the condition precedent. See Sequoia Invest. Corp. v. Paillard, 135 Cal.App.2d 166, 171-72, 286 P.2d 857 (1955). In his September 29, 1989 letter to Lane, Langson wrote that he was "still interested in proceeding with this project." In addition, Kim Snyder, Langson's agent, sent letters to third parties with whom he was discussing prospective sales or leases stating that Langson was in escrow to purchase the property. Thus, the district court did not err in concluding that Langson waived the September 29th deadline for tendering a final bankruptcy order and that the Agreement did not automatically terminate on September 29, 1989.
 
 
 30
 In light of such waiver, the district court correctly found that Langson had to provide Lane with notice that timely production of the bankruptcy order would be required. "Where a specified time for performance has been waived by a party, 'he must in order to put the other in default, ... give notice that strict compliance will thereafter be required....' " Kossler v. Palm Springs Developments, Ltd., 161 Cal.Rptr. 423, 431, 101 Cal.App.3d 88, 98-99 (1980) (quoting Lifton v. Harshman, 80 Cal.App.2d 422, 433, 182 P.2d 222 (1947)).
 
 2. Adequacy of Notice
 
 31
 The district court adopted the special master's finding that Langson's September 29, 1989 letter to Lane acted as notice that timely production of the bankruptcy order was necessary. This finding is a mixed question of fact and law and therefore subject to de novo review. In his September 29th letter, Langson clearly informed Lane that he would proceed with the transaction "provided we can address each of the above items in a timely manner." One of the "items" was production of the final bankruptcy court order. Other facts indicate that Lane was on notice that Langson's demand for the bankruptcy order was urgent, and not merely a "housekeeping" matter to be resolved at closing. For example, in a October 18, 1989 telex, Snyder urged Lane to contact FATCO "ASAP" regarding the bankruptcy order.
 
 
 32
 We reject Lane's argument that more definite notice was required. The cases cited by Lane, Chin Ott Wong v. Title Ins. & Trust Co., 89 Cal.App.2d 183, 200 P.2d 541 (1948) and Lopez v. Bell, 207 Cal.App.2d 394, 24 Cal.Rptr. 626 (1962), are inapposite. Those cases involved a series of payments under land sale contracts where the vendor had accepted several late payments. The court in Lopez emphasized that because "the law looks unfavorable upon forfeitures," definite notice must be given that the time requirement will be enforced. Unlike the parties in those cases, Langson sufficiently objected to Lane's failure to timely produce the bankruptcy order. Moreover, it is Langson, not Lane, who would forfeit the deposit. Thus, the district court did not err in finding that Langson provided Lane with adequate notice that the bankruptcy order had to be produced within a reasonable time.
 
 3. Reasonable Time to Perform
 
 33
 Where no time is specified for the performance of a required act, a reasonable time is allowed. Henry v. Sharma, 154 Cal.App.3d 665, 669, 201 Cal.Rptr. 478, 480 (1984). What constitutes a "reasonable time" for performance is a question of fact. Id. at 670, 201 Cal.Rptr. at 481. Thus, the district court's adoption of the special master's finding that the period from September 29, 1989 to November 7, 1989 was a reasonable time may overturned only if clearly erroneous.[1]
 
 
 34
 The determination of reasonableness takes into account "[t]he conduct and situation of the parties, the nature of the transaction, and the circumstances of the particular case." World Savings and Loan Assoc. v. Kurtz Co., 6 Cal.Rptr. 665, 669, 183 Cal.App.2d 319 (1960). In a October 18, 1989 telex, Snyder urged Lane to contact FATCO "ASAP" regarding the bankruptcy order, but over two weeks later, Lane still had not produced a final bankruptcy order. Moreover, Lane's attorney stated in a November 15, 1989 letter to Langson that if he had known FATCO approved the draft bankruptcy order "the confirmatory order would have been signed last week." The record reveals no reason why Lane could not have contacted FATCO himself and produced the bankruptcy order by November 7, 1989. Thus, the district court's finding that the period from September 29, 1989 to November 7, 1989 was a reasonable amount of time to require Lane to obtain the bankruptcy order is a reasonable inference from the facts.
 
 
 35
 The parties devote much attention to the issue of when the bankruptcy order would have become "final" and how far in advance the bankruptcy order needed to be produced in light of that fact.[2] When the bankruptcy order would have become final is beside the point, however. The written bankruptcy order was required by the Agreement and was needed to ensure that the title insurance company would not include an exception on the policy pertaining to bankruptcy court approval. Langson could have cancelled the Agreement when Lane failed to provide the order on September 29th. After giving Lane notice that timely receipt of the bankruptcy order would be demanded, Langson was required only to give Lane a reasonable amount of time thereafter to produce the order. The district court's adoption of the special master's finding that the period from September 29, 1989 to November 7, 1989 was a reasonable amount of time is not clearly erroneous.
 
 4. Prevention
 
 36
 Lane argues that he was excused from providing the bankruptcy order by November 7, 1989, because Langson prevented him from doing so. Although Snyder in fact obtained approval[3] from FATCO's agent prior to November 7, 1989, neither he nor Langson ever informed Lane or his attorney of this fact. Thus, Lane claims that Langson effectively prevented Lane from obtaining the bankruptcy order by November 7, 1989.
 
 
 37
 The fact that Lane was not informed that FATCO had approved the draft bankruptcy order did not excuse Lane from performing. Although Snyder was primarily dealing with FATCO regarding the form of the bankruptcy order, Lane actually chose FATCO as the title company and was to pay its fee. Lane could have contacted FATCO directly regarding the bankruptcy order and indeed in a telecopy dated October 18, 1989, Snyder advised Lane to contact FATCO was soon as possible. Thus, the district court did not err in failing to hold that Lane was excused from performing on November 7, 1989.
 
 
 38
 Having concluded that Langson effectively terminated the agreement on November 7, 1989, we do not reach the issue of whether Langson had independent grounds on which to terminate the agreement on November 29, 1989.
 
 
 39
 Accordingly, the district court's judgment is AFFIRMED.
 
 
 
 *
 The Honorable Barbara A. Caulfield, District Judge for the Northern District of California, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this Circuit except a provided by Ninth Circuit Rule 36-3
 
 
 [1]
 Contrary to Lane's assertions, the issue is not whether it was unreasonable for Lane to produce the bankruptcy order after November 7, 1989. Rather, the issue is whether the November 7th deadline gave Lane a reasonable amount of time to perform. Kossler v. Palm Springs Developments, Ltd., 161 Cal.Rptr. 423, 431, 101 Cal.App.3d 88, 98-99 (1980)
 
 
 [2]
 Generally, bankruptcy orders are subject to a ten-day appeal period. Bankruptcy Rule 8002(a). A special provision of the Bankruptcy Code applies in this situation, however. The sale of Lanes' property to Langson was authorized as a matter of law as of the bankruptcy hearing on August 18, 1989, because no timely objections were made to the sale. 11 U.S.C. 102(1); 11 U.S.C. 363(b)
 
 
 [3]
 FATCO's approval was subject to receipt of a list of title exceptions to be resolved at closing