57 F.3d 1076
NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 CHARTER TRAVEL CORPORATION, Plaintiff-Appellee,
v.
AIR NATIONAL AIRCRAFT SALES & SERVICE, INC., Defendant-Appellant.
 No. 93-17226.
 United States Court of Appeals, Ninth Circuit.
 June 6, 1995.
 
 Before GIBSON,* GOODWIN, and HUG, Circuit Judges.
 
 
 1
 Memorandum**
 
 
 2
 This case involves a decade-old contract dispute between Charter Travel Corp. ("Charter"), a charter tour operator, and Air National Aircraft Sales & Service, Inc. ("Air National"), a licensed air carrier.[1] Air National appeals the district court's entry of summary judgment in favor of Charter on Air National's counterclaims for breach of contract, fraudulent inducement, and tortious/intentional interference. We have jurisdiction over this appeal pursuant to 28 U.S.C. Sec. 1291 (1988), and we affirm.
 
 I. BACKGROUND
 
 3
 In January 1984, Air National and Charter entered into a contract (the "charter agreement") whereby Air National agreed to provide round-trip flights to Europe for the upcoming summer season.[2] In the charter agreement, Charter specified that Air National use "B [Boeing] 747 aircraft" because of their large seating capacity. The parties agreed that Charter would pay Air National $200,000 as an advance payment/security deposit and $200,000 in start-up costs and that Charter would place additional funds into an escrow account fifteen days prior to each flight.
 
 
 4
 For the May 10th and May 24th flights, Charter made its escrow payment only three days in advance. Air National, however, never objected to the late payments or provided an opportunity to cure as set forth in the charter agreement.[3] Instead of providing a 747 aircraft for the May 24th flights, Air National used two smaller aircraft, which had less total seating capacity. As a result, Charter was forced to book approximately forty-nine of its passengers on commercial flights.
 
 
 5
 On May 28, Charter sent Air National a telex seeking assurances that Air National would provide 747's for all future flights. On May 31, Air National advised Charter that it was repudiating the charter agreement and would not be providing services for the flight scheduled that day. Charter filed a lawsuit and requested a temporary restraining order to compel Air National to fulfill its contractual obligations. Meanwhile, on June 1, Charter inadvertently transferred $1.1 million into Air National's escrow account.
 
 
 6
 On June 6, Charter and Air National entered into a settlement agreement. Charter agreed to voluntarily dismiss the pending litigation in exchange for Air National's promise to begin providing flights again on June 14. The parties agreed that: (1) Air National would reimburse Charter for its May 24th and May 31st flight expenses; (2) Air National would refund the $1.1 million that Charter had erroneously transferred into the escrow account; and (3) Charter would make a payment into the escrow account no later than June 8 for the June 14th rotation. In an effort to help Air National acquire additional aircraft, Charter also agreed to provide Air National with several letters of credit.[4]
 
 
 7
 On June 7, Air National notified Charter that another air carrier would be providing services for the June 7th and June 14th flights.[5] When Air National failed to respond to Charter's request for assurances, Charter refused to make the June 8th escrow payment and arranged for Air Canada to handle all of its remaining flights.
 
 
 8
 Charter then filed the present lawsuit, and Air National filed a series of counterclaims. On July 24, 1991, Charter filed a motion for partial summary judgment. The district court (Judge William A. Ingram) granted summary judgment in favor of Charter on Air National's counterclaims for: fraudulent concealment of Charter's relationship with Air Canada; malicious prosecution; and abuse of process. The court denied Charter's motion for summary judgment on Air National's counterclaims for: breach of contract; fraudulent inducement; and tortious/intentional interference.
 
 
 9
 After additional discovery had taken place, Charter requested leave to file a second motion for partial summary judgment. Judge Ingram granted Charter's request and, without objection from either party, referred the matter to Judge Robert P. Aguilar to hear and decide the pending motion for summary judgment.
 
 
 10
 The district court (Judge Aguilar) noted that because the June 6th settlement agreement constituted an accord and satisfaction, Air National could not maintain a claim for breach of the underlying charter agreement. Alternatively, the court found that, regardless of the settlement agreement, Air National could not maintain its counterclaim for breach of contract because it had failed to give Charter written notice and an opportunity to cure as provided for in the charter agreement. Next, the court found no support for Air National's claim that Charter fraudulently induced it to enter into the settlement agreement. Finally, the court rejected Air National's claim that Charter had interfered with its attempts to purchase additional aircraft from either Guinness Peat Aviation ("Guinness Peat") or Air Canada.
 
 
 11
 Therefore, the district court granted summary judgment in favor of Charter and dismissed all of Air National's counterclaims. The court denied Air National's motion for reconsideration and, providing that Air National was not successful on appeal, conditionally granted Charter's motion to dismiss its claims.
 
 II. DISCUSSION
 
 12
 Summary judgment is appropriate if, viewing the facts and law in the light most favorable to the nonmoving party, there is no genuine issue of material fact. Shouse v. Ljunggren, 792 F.2d 902, 904 (9th Cir.1986). When a properly supported motion for summary judgment is made, the adverse party must come forward with specific facts showing that there is a genuine issue for trial. Fed.R.Civ.P. 56(e). We review a grant of summary judgment de novo. Shouse, 792 F.2d at 903.
 
 A. The Charter and Settlement Agreements
 1. Law of the Case
 
 13
 Air National claims that the doctrine of law of the case prevented Judge Aguilar from granting a motion for summary judgment that Judge Ingram had already denied. Contrary to Air National's arguments, the doctrine of law of the case does not apply to pretrial rulings such as motions for summary judgment. Id. at 904. We have specifically held that "a district court judge may grant a motion for summary judgment that was previously denied by another district court judge." Id. We conclude that Judge Aguilar was not bound to follow Judge Ingram's previous partial denial of Charter's motion for summary judgment.
 
 2. The Charter Agreement
 
 14
 Air National concedes that the settlement agreement was intended as an accord and satisfaction and designed to fully resolve the parties' prior disputes. "Accord and satisfaction is a method of discharging a contract, or settling a cause of action arising either from a contract or from tort, by substituting for such contract or such cause of action an agreement for the satisfaction thereof, and executing such substituted agreement." See 1 C.J.S. Accord and Satisfaction Sec. 2 (1985). Therefore, notwithstanding Air National's claim that Charter fraudulently induced it to enter into the settlement agreement, Air National's arguments concerning Charter's alleged breach of the underlying charter agreement must fail.
 
 3. The Settlement Agreement
 
 15
 Air National complains that Charter breached the settlement agreement by refusing to make the June 8th escrow payment. Despite its promise to begin flights again on June 14, on June 7, the day after the parties had entered into the settlement agreement, Air National advised Charter that it was canceling services for the upcoming flights. Charter immediately advised Air National that it would not make the escrow payment unless Air National confirmed that it would provide services for the June 14th flights. We believe that there is no genuine issue of material fact that Air National's June 7th telex constituted an unequivocal repudiation of the settlement agreement, relieving Charter of its obligation to make the escrow payment. See Kossler v. Palm Springs Devs., Ltd., 161 Cal.Rptr. 423, 433-34 (Cal.Ct.App.1980) ("It is well settled that an unequivocal repudiation of the contract by one party prior to material breach of the contract by the other party excuses the other party from tendering performance of his concurrently conditional obligations.").
 
 B. Fraudulent Inducement
 
 16
 Air National argues that Charter fraudulently induced it to enter into the settlement agreement without intending to fulfill its contractual obligations. In support of this argument, Air National relies on Charter's refusal to make the June 8th escrow payment and claims that Charter entered into the settlement agreement in order to recover the $1.1 million that had been inadvertently transferred into the escrow account.
 
 
 17
 Under California law, in order to succeed on its claim for fraudulent misrepresentation, a plaintiff must establish: (1) misrepresentation; (2) knowledge of falsity; (3) intent to defraud; (4) justifiable reliance; and (5) resulting damage. See Paccar Int'l, Inc. v. Commercial Bank of Kuwait, 757 F.2d 1058, 1064 (9th Cir.1985). Moreover, a plaintiff must show that the defendant evinced an intent to defraud at the time of the misrepresentation. See People v. Ashley, 267 P.2d 271, 282 (Cal.) ("Whether the pretense is a false promise or a misrepresentation of fact, the defendant's intent must be proved in both instances by something more than mere proof of nonperformance or actual falsity.") (citations omitted), cert. denied, 348 U.S. 900 (1954).
 
 
 18
 We agree with the district court that Air National's allegations do not support its claim that Charter entered the settlement agreement with intent to defraud. Charter's failure to make the June 8th escrow payment was in response to Air National's June 7th telex that it was cancelling services for the upcoming flights. Furthermore, during the settlement negotiations, Air National admitted that Charter was entitled to the $1.1 million and discussed arrangements to return the money. We have reviewed Air National's numerous allegations concerning Charter's alleged misconduct, most of which are not supported in the record, and find them to be without merit.
 
 C. Tortious or Intentional Interference
 
 19
 Air National claims that it had the financing to acquire at least one additional aircraft and that Charter's refusal to make the June 8th escrow payment and provide the promised letters of credit thwarted it negotiations with Guinness Peat. Air National concedes that it had not executed an agreement, but argues that the district court erred by requiring it to establish that a valid contract existed.
 
 
 20
 Under California law, in order to state a claim for tortious interference with the existing or prospective contractual rights of another, a plaintiff must establish: (1) an economic relationship containing the probability of future economic benefits; (2) the defendant's knowledge of the existence of the relationship; (3) the defendant's intentional commission of acts designed to disrupt this relationship; (4) actual disruption; and (5) damages. See C. Pappas Co. v. E & J Gallo Winery, 610 F.Supp. 662, 667 (E.D.Cal.1985), aff'd, 801 F.2d 399 (9th Cir.1986).
 
 
 21
 Air National was in preliminary discussions with Guinness Peat and had received a non-binding proposal. A Guinness Peat representative testified that Air National's good faith check had bounced and that "we [were] miles apart from ever coming to a fruitful agreement." We conclude that Air National has failed to establish that it had successfully entered into an economic relationship containing the probability of future economic benefits. Moreover, even accepting Air National's allegations about its potential for a contractual relationship with Guinness Peat, Air National has not shown that Charter's failure to make the escrow payment or provide the letters of credit was intentionally designed to disrupt Air National's business relationships.[6] See C. Pappas Co., 610 F.Supp. at 668 (In order to prevail on a cause of action for intentional interference with prospective economic advantage, a plaintiff must plead and prove "intentional acts on the part of the defendant designed to disrupt the relationship.") (quotations omitted).
 
 III. CONCLUSION
 
 22
 Accordingly, we affirm the district court's order granting summary judgment in favor of Charter.
 
 
 
 *
 The Honorable Floyd R. Gibson, Senior Circuit Judge for the Eighth Circuit Court of Appeals, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 Shortly after Charter commenced this lawsuit, Air National filed for bankruptcy; the automatic stay was not lifted until 1989
 
 
 [2]
 All dates refer to 1984 unless otherwise indicated
 
 
 [3]
 The charter agreement provides in relevant part:
 (A) In the event that, after this Agreement has been signed by the Charterer and accepted by Air National:
 * * *
 (3) this Agreement is cancelled by Air National due to the Charterer failing to comply with any of the material terms of this Agreement, which failure is not remedied within thirty (30) days (sixteen days in the event of failure to make any payment due hereunder) (or by the day preceding the date of the flight departure if that is sooner) after written notice from Air National of such failure; then the following charges shall be assessed....
 (emphasis added).
 
 
 [4]
 According to the settlement agreement, Charter was not obligated to provide the first letter of credit until Air National had executed a lease agreement for additional aircraft
 
 
 [5]
 Although Air National claims that it had only refused to provide certain ground transportation services, the telex stated: "due to the continued delay of an 2nd and 3rd 747 ac [aircraft] we will not be flying the charter travel program this or next wkend jun 7, 8, 9 jun 14, 15, 16 our reps will not be available ... we are not involved at all."
 
 
 [6]
 A Guinness Peat representative testified that he was unaware of Charter's escrow payments and was not relying on them during Guinness Peat's negotiations with Air National. Furthermore, as we have noted, Charter was not obligated to provide the first letter of credit until after a lease agreement had been executed