**AMERICAN SHEET METAL, INC., an Oregon Corporation, Plaintiff,**

v.

**EM–KAY ENGINEERING COMPANY, INC., an Illinois Corporation, Defendant.**

**Civ. No. S–76–517 LKK.**

United States District Court, E. D. California.

Oct. 19, 1979.

R. Stewart Baird, Jr., Bronson, Bronson & McKinnon, San Francisco, Cal., for plaintiff.

Robert L. Davis, Price, Burness, Price & Davis, Chico, Cal., for defendant.

## MEMORANDUM AND ORDER

KARLTON, District Judge.

AMERICAN SHEET METAL, INC., an Oregon Corporation (hereinafter "AMERICAN"), alleging diversity, brought suit against Defendant EM–KAY ENGINEERING COMPANY, INC., an Illinois Corporation (hereinafter "EM–KAY"). AMERICAN alleges that it installed a high pressure conveying system as a subcontractor under EM–KAY's prime contract with Louisiana Pacific. It alleges that defendant has breached the contract by refusing to pay to plaintiff the sum of $50,222.00 due. EM–KAY's answer and counterclaim alleged that the system, contrary to representation, would not perform as required; that EM–KAY had been backcharged by Louisiana Pacific for the sum of $43,812.59, and that it suffered additional damages. AMERICAN has now moved for summary judgment relative to EM–KAY's counterclaim.

AMERICAN asserts that it is entitled to summary judgment on two separate theories. First, it asserts that although not licensed to do so, EM–KAY was performing contractor's work in California. AMERICAN asserts that under such circumstances, California law does not permit EM–KAY to maintain this action. Secondly, AMERICAN asserts that EM–KAY's counterclaim is for indemnity, and inasmuch as it has not yet suffered damage, its action is premature. The Court will address the issues seriatum.

I. *IS THE COUNTERCLAIM BARRED BY VIRTUE OF EM–KAY NOT HAVING A CALIFORNIA LICENSE?*

AMERICAN asserts that the counterclaim is barred because the gravamen of EM–KAY's counterclaim is founded upon its performance as a contractor in California. It asserts that California law bars any suit by a California contractor under such circumstances unless he was licensed. It is

uncontested that EM–KAY did not have a California license.[1]

### A. May A California Statute "Close The Door" Of The Federal District Court?

Lurking beneath the issue framed by the parties is a subtle and important question which the parties have not addressed. The California statute provides in pertinent part as follows:

"No person engaged in the business or acting in the capacity of a contractor, may *bring or maintain* any action in any court *of this state* for the collection of compensation for the performance of any act or contract for which a license is required . . . without *alleging and proving* that he was a duly licensed contractor . . . ." *Business & Professions Code* § 7031 (Emphasis added.)

Thus, by its terms the statute does not purport to be substantive, but rather procedural. It purports to deal with how actions are pled, and the jurisdiction of the state court.[2]

In general, *Erie RR Co. v. Thomkins* (1938) 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 requires the application of state substantive law, not state procedure. In *Guaranty Trust Co. v. York* (1945) 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079, the court enunciated an "outcome determination" test in deciding whether a matter was substantive or procedural. The court held "the intent of that decision [*Erie*] was to insure that, in all cases where a federal court is exercising jurisdiction solely because of the diversity of citizenship of the parties, the outcome of the litigation in the federal court should be substantially the same, so far as legal rules determine the outcome of litigation, as it would be if tried in the State court." 326 U.S. at 109, 65 S.Ct. at 1470. Of course the "outcome determinative" test is not rigid,

and it must yield in appropriate cases. *Hanna v. Plumer* (1965) 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (service of process governed by Federal Rules rather than state law); *Byrd v. Blueridge Rural Electric Coop.* (1958) 356 U.S. 525, 78 S.Ct. 893, 2 L.Ed.2d 953 (allocation of duties between judge and jury determined by federal rather than state law).

Statutes of this kind have in general been characterized as statutes which "close the door" of the courthouse. See *Szantay v. Beach Aircraft Corporation* (4th Cir. 1965) 349 F.2d 60; *Grand Bahama Petroleum Co. v. Asiatic Petroleum* (2nd Cir. 1977) 550 F.2d 1320. When the doors of the courthouse have been closed we must decide whether they are closed because there is no cause of action (a state question governed by state law) or because of a lack of jurisdiction—the power to hear. In the latter case, federal courts must look to their own jurisdictional sources. The balance of this part of the opinion seeks to explore the test for characterizing the statute.

■■■ As I have noted, although procedural in form, the statute appears to speak of the state court's jurisdiction to hear the case. A basic principle of federalism is that the district courts of the United States in determining their jurisdiction must look to the sources of their power and not to acts of the state which have no power to enlarge or to contract federal jurisdiction. *Grand Bahama Petroleum Co., supra* at 1325. Nonetheless, if a state provision, whether legislatively adopted or judicially declared, whatever its form, is in reality a substantive right, or relates to the obligation at issue, so as to be determinative of the outcome of the litigation, it is controlling on the federal court in diversity cases. Id.

---

**1.** The parties have assumed that California law should be applied. I make the same assumption here. See *Brobeck, Phledger & Harrison v. Telex Corporation* (9th Cir. 1979) 602 F.2d 866, 871, n. 2. See *Klaxon v. Stentor Electric Mfg. Co.* (1941) 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477.

**2.** Although the statute also speaks in terms of proof (a substantive issue), the effect of prov-

ing a license is that the court would then have jurisdiction, and the contractor could "bring or maintain" his action. Since the court must maintain jurisdiction to obtain the proof, it is clear that however inartfully drafted, what we deal with is the right to bring the action rather than the requisite proof.

"If the state provision is a procedure intimately bound up with the state right or obligation, it is . . . controlling. . . . If the state procedural provision is not intimately bound up with the right being enforced but its application would substantially affect the outcome of the litigation, the federal diversity court must still apply it unless there are affirmative countervailing federal considerations." *Szantay, supra* at 63–64.

*Szantay, supra* and *Grand Bahamas, supra* are illustrative. In *Grand Bahamas, supra,* a state law prohibited a foreign corporation from maintaining any action in the state court until it qualified to do business in the state. The Court of Appeals held that the district court was not bound by the state law provision and could entertain an action under the Federal Arbitration Act. Determinative there was the fact that at issue was the Federal Arbitration Act and thus the litigation did not deal with "state-created rights but with rights arising out of the exercise of the Congress of its constitutional power to regulate commerce . . . ." Id. at 1324.[3]

In *Szantay, supra,* on the other hand, central to the issue was the unequal treatment of in-state and out-of-state litigants. There the statute provided that an action against a corporation created under the law of another state might be brought in the forum state by a non-resident only when the cause of action arose within the forum state. The statute did not similarly restrict forum state citizens. There the Court of Appeals observed that since the whole purpose of diversity jurisdiction was to avoid

unequal treatment of citizens, and to insure national justice, the court was obligated to look to its source of jurisdiction (the diversity statute) rather than state law.

In the instant case, we are not faced with an action implicating federal considerations (as in *Grand Bahamas, supra*), nor with unequal treatment of foreign litigants (as in *Szantay, supra*), but rather with California's right to regulate commercial activity within its own borders.[4] While it is true that by happenstance neither contractor, subcontractor, nor apparently the principal are California corporations, the plant being built was located in Oroville, California. While this fact is critical in determining which state's law should apply in a true conflict of laws issue, it appears to me to be equally valuable in determining whether to characterize the statute as one which is jurisdictional (requiring the application of federal law) or as one defining a cause of action (requiring application of state law).

■ I find that the California statute is controlling, and in the event that it closes the door in this case, the counterclaim cannot stand.[5] I now turn to the substantive issue.

B. *IS THE SUBJECT OF THE CONTRACT WITHIN THE PURVIEW OF THE STATUTE?*

■ As noted above, *Business & Professions Code* § 7031 prohibits suits when a person is "engaged in business or acting in the capacity of a contractor . . . without alleging and proving that he was a duly licensed contractor . . . ." In turn, *Business & Professions Code* § 7026 defines a contractor as:

"capacity to sue." *Power City Communications Inc. v. Calaveras Telephone Co.* (E.D.Cal. 1968) 280 F.Supp. 808. The case persuasively explores the relationship between Rule 17(b) and *Business & Professions* Code § 7031. Nonetheless, I do not believe the opinion is dispositive of the issue. Analytically the issue that is presented is not the capacity of a corporation to sue or be sued, since the statute applies whether the litigant is a corporation or not. Any contractor, corporate or otherwise, is faced with a closed court when it has not obtained a California contractor's license.

---

**3.** It must be stressed that jurisdiction in *Grand Bahamas* was based on diversity and *not* on "federal question" jurisdiction.

**4.** The statute will have a tendency to fall more heavily and more regularly on foreign contractors than California contractors—simply because foreign contractors are less likely than domestic contractors to have obtained a California contractor's license. Nonetheless, as the California cases demonstrate, when a California contractor fails to obtain a license, the door is closed to the domestic contractor as well.

**5.** My brother Thomas J. MacBride has analyzed the problem created by the statute as one of

"[A]ny person, who undertakes to or offers to . . . or by or through others [undertakes to or offers to] construct, alter, repair, add to, subtract from, improve, move, wreck or demolish any . . . structure, project, development or improvement . . . ."

Appropriately, the wide breadth of the statute has been recognized by California courts. They have found that activities such as installing sprinkler systems, setting frames in concrete, affixing signs, and securing netting to frames, constitute construction under the section. *Johnson v. Mattox* (1968) 257 Cal.App.2d 714, 65 Cal. Rptr. 185. In the instant case EM–KAY coordinated the creation of an entire steam generating plant. The contract between EM–KAY and AMERICAN involved the supplying and installation of machinery which became a permanent fixture in the plant. It thus appears that the activities are well within the scope of "contracting" defined by *Business & Professions Code* § 7026. Accordingly, a license was required under *Business & Professions Code* § 7028, in order to bring an action to recover "compensation" under § 7031.

### C. DOES EM–KAY SEEK "COMPENSATION"?

As I have noted EM–KAY seeks damages from AMERICAN allegedly suffered by EM–KAY as a result of AMERICAN'S failure to properly perform. Thus the question that is presented is whether a suit brought by a contractor for damages suffered by nonperformance of his subcontractor seeks "compensation."

■ In the absence of definitive adjudication by the California Supreme Court, resolution of the issue in a diversity action is dependent upon this Court's determination as to what decision that Court would reach. In this regard, decisions by the California Courts of Appeal are merely data for determining how the highest California court would rule. *Scandinavian Airlines System v. United Aircraft Corporation* (9th Cir. 1979) 601 F.2d 425, 427. Unfortunately, definitive guidance by the Courts of Appeal as to what the California Supreme

Court would rule is lacking. The Courts of Appeal are divided on the meaning of the term "compensation" in this context.

In *Davis v. Superior Court of San Diego Co.* (1969) 1 Cal.App.3d 156, 81 Cal.Rptr. 453, the court defined the term "compensation" to denote "sums claimed as an agreed price, fee or percentage earned by performance, and also sums claimed as the reasonable value of work done under an implied contract." 1 Cal.App.3d 156, at 159, 81 Cal.Rptr. at 455. In effect, the court limited the scope of the statute's reach to suits between the contractor and his principal. Accordingly, under the *Davis* court's view, suits for damages brought by a contractor against his materialmen were outside the statute's purview. Thus in *Davis, supra,* an unlicensed subcontractor was permitted to crosscomplain against a materialman for faulty materials which the subcontractor had been required to replace. The court found that his cause of action, premised upon warranty, was not within the scope of, or purpose of the code section. The court emphasized that the purpose of the statute was to protect the "public," (i. e. the principal). It reasoned that since the principal was not a litigant, the suit was not within the scope of prohibited actions under the statute.

The *Davis* court's analysis was rejected in *General Insurance Co. of America v. St. Paul Fire & Marine Ins. Co.* (1974) 38 Cal. App.3d 760, 113 Cal.Rptr. 613. In the latter case the court found the *Davis* definition too restrictive. It defined the actions prohibited by the section as actions for:

"[d]amages suffered by a contractor lacking the requisite license under the law for breach of the contractual obligation where either (1) the making of the contract or (2) the performance during which the breach occurs comes within the licensing requirement." 38 Cal.App.3d 760 at 762, n. 1, 113 Cal.Rptr. 613 at 614.

It is clear that under *Davis* EM–KAY may maintain its counterclaim, while under *General Insurance* it may not. The Court now undertakes its task of determining what the Supreme Court of California will ultimately decide.

I begin by noting that the statute is draconian in its effect. It prohibits "compensation" no matter the quality of performance. Although the consequences are severe, severity alone cannot justify a district court's departure from constitutionally permitted consequences the state legislature has mandated. On the other hand, the harsh consequences justify careful scrutiny to ascertain the class intended to suffer the penalty, and the circumstances under which the penalty is to be suffered. As *Davis* observes, the penalty provisions of the statute are designed " . . . to protect the public from the perils incident to contracting with incompetent or untrustworthy contractors. . . . The court will not impose penalties for non-compliance not provided by the statute." *Davis Co. v. Superior Court, supra* at 158, 81 Cal.Rptr. at 455. It thus appears to me that the *General Insurance* formulation does not directly advance the purposes of the statute. The Ninth Circuit, in a different context, has also read the statute narrowly to limit it to the circumstances precisely specified in the statute itself. *Comet Theatre Enterprises, Inc. v. Cartwright* (9th Cir. 1952) 195 F.2d 80.

■ Two conventional canons of statutory construction also aid in determining the scope of the statute. First, statutes in derogation of the common law are to be strictly construed. 73 Am.Jur.2d, *Statutes* § 287 (1974). Here without doubt the statute derogates the common law right of one who suffers damage by virtue of a breach of contract to bring an action. Second, statutes, whether civil or criminal, providing a penalty are to be strictly construed. 73 Am.Jur.2d, *Statutes* §§ 293–294 (1974). This statute provides a heavy penalty indeed for failure to obtain a license.

As *Davis* noted, the protection of the general public does not appear to be directly involved where, as here, the suit is by an unlicensed contractor for recovery of the allegedly defective work of the subcontractor. Moreover, under the standards for interpretation of statutes, the statute should not be construed to reach this situation.

The Court accordingly finds that EM–KAY's counterclaim is not barred by the fact that it is unlicensed.

## II. *INDEMNITY*

■ AMERICAN also attacks the counterclaim asserting that EM–KAY cannot claim indemnification since it has incurred no damage. EM–KAY does not allege a written contract of indemnity, accordingly we deal with the California doctrine of implied indemnity. "It is well settled that a cause of action for implied indemnity does not accrue or come into existence until the indemnitee has suffered actual loss through payment." *E. L. White, Inc. v. City of Huntington Beach* (1978) 21 Cal.3d 497, 506, 146 Cal.Rptr. 614, 619, 579 P.2d 505, 510.

The deposition of EM–KAY's president demonstrates that a certain invoice for the purchase of fuel and removal of the allegedly inadequate machinery forwarded to EM–KAY by Louisiana Pacific, has not been paid. Accordingly, as to that amount, no indemnity can be claimed by the defendant. On the other hand, the same deposition establishes that a backcharge was paid. A claim of indemnity as to that amount is clearly proper. Thus, if AMERICAN's characterization of EM–KAY's counterclaim as one in indemnity is correct, a partial summary judgment for that portion relating to the fuel purchase and removal expenses would be granted, and as to that portion relating to the backcharge would be denied.

In this case, however, EM–KAY disputes plaintiff's characterization of its counterclaim. It asserts that it attempted to plead a cause of action in fraud. It then argues that inasmuch as AMERICAN has failed to demonstrate that there is no material issue of fact relative to fraud, the summary judgment should be denied in its entirety. *Federal Rule of Civil Procedure* 56(c). If EM–KAY has attempted to plead fraud, it has simply failed to do so. The ordinary elements of representation, falsity, reasonable reliance and damage simply have not been pled. *Federal Rule of Civil Procedure* 9(b) requires "In all averments of fraud or mistake, the circumstances constituting fraud

or mistake shall be stated with particularity."

Pleadings which are so vague and ambiguous that the adverse party cannot determine what their true nature is, are subject to a motion for a more definite statement under Rule 12(e). This motion has not been brought by AMERICAN. The Court believes that the reason for the failure to bring such a motion may be because AMERICAN could not reasonably anticipate that EM–KAY would characterize its cause of action as one for fraud.

A motion under *Federal Rule of Civil Procedure* 12(e) appears to be restricted to the parties. On the other hand, an order to strike under 12(f) may be made ". . . upon the court's motion at any time . . .". One ground for striking a pleading is that it is "immaterial." Immaterial simply means "outside the scope of the action." Sheppard's *Manual of Federal Practice,* 2 Ed. 345. Since under its Points and Authorities EM–KAY claims it attempted to state a counterclaim for fraud and not for indemnity, and since it did nothing of the sort, the counterclaim is stricken. EM–KAY is given thirty (30) days to amend.

IT IS SO ORDERED.